UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Criminal No. 15-02-ART |
| v. | ) |
| EDWARD DARKO AGYEMANO, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

It is not uncommon for courts to see multiple cases of the same type, often involving the same parties. It is uncommon, however, to see a second case involving the same offense and the same defendant before the Court has even resolved the first. That is the precise situation here.

In the first case, a jury convicted Edward Darko Agyemano of resisting deportation. *See United States v. Agyemano*, No. Crim. 14-20-ART (E.D. Ky. Nov. 25, 2014), D.E. 56 (guilty verdict).[1] Because the outcome of Agyemano's motion to overturn the guilty verdict depended on a factual dispute currently before the Board of Immigration Appeals ("BIA"), the Court chose to stay sentencing until the BIA resolved the dispute. D.E. 80 (order denying Agyemano's motion to overturn his verdict pending the outcome of his BIA appeal). Before the BIA could act, however, federal agents tried again to deport Agyemano. Again, Agyemano resisted. And again, the United States charged him with resisting deportation. So here we are, for the second time, under much the same circumstances as the first.

---

[1] Citations to docket entries in the first case against Agyemano will be labeled "D.E." Citations to docket entries in this second case will be labeled "R."

Agyemano filed a motion to dismiss the most recent charge against him, claiming that he cannot be guilty of resisting expulsion because the underlying order was (1) automatically stayed, (2) not final, and (3) in violation of his due-process rights. *See* R. 17. But Agyemano's arguments fail. When federal agents tried to remove Agyemano for the second time, they were executing an enforceable, final order that did not violate due process. Accordingly, the Court will deny Agyemano's motion to dismiss.

## BACKGROUND

Edward Darko Agyemano is a citizen of Ghana. D.E. 1-1 at 1. In 2003, Agyemano entered the United States on a student visa. *Id.* But contrary to the conditions of his student visa, Agyemano did not enroll in classes. *Id.* Nearly five years later, the Department of Homeland Security served a notice for Agyemano to appear before an Immigration Judge ("IJ") for failing to maintain the student status under which he was admitted to the United States. *Id.* at 2. But Agyemano did not show up for the hearing. *Id.* According to Agyemano, he never received the notice to appear. Regardless, on September 9, 2013, the IJ ordered *in absentia* that Agyemano be removed from the United States. *Id.* Because Agyemano had no right to appeal the *in absentia* order of removal, 8 C.F.R. § 1240.15 ("[N]o appeal shall lie from an order of removal in absentia."), he filed a motion to reopen the proceeding and a motion for asylum, D.E. 1-1 at 2–3. The IJ denied both motions, *id.*, but failed to inform Agyemano of his right to appeal the denial of his motion to reopen. R. 17-2. When federal agents tried to execute the removal order, Agyemano physically resisted. D.E. 1-1 at 2–3. The United States charged him with violating 8 U.S.C. § 1253(a)(1)(C)—"conniv[ing] or conspir[ing] . . . to prevent or hamper . . . the alien's departure pursuant to [an outstanding final order of removal]." D.E. 9. In August 2014, a

2

jury found Agyemano guilty of the charge. D.E. 56. Agyemano challenged the verdict. D.E. 59 (motion to set aside the verdict); D.E. 69 (motion to reconsider). Among other arguments, Agyemano alleged that the IJ's failure to notify him of his right to appeal violated his due process rights. D.E. 59 at 2–3; *see also* D.E. 69 at 2–3.

Meanwhile, Agyemano's administrative challenge continued. On October 8, 2014, the IJ reissued the order denying Agyemano's motion to reopen the removal proceeding. R. 17-3. In the order, the IJ acknowledged that he had failed to properly notify Agyemano of his right to appeal the denial of his motion to reopen the September 2013 removal order. *Id.* at 1–2. This time, however, the IJ remedied the error, explicitly advising Agyemano of his right to appeal. *Id.* at 2. Agyemano appealed the denial, alleging that he did not receive notice of the original removal proceeding. R. 17-4. That appeal is still pending before the BIA. R. 17-5.

The outcome of Agyemano's BIA appeal will also determine the outcome of Agyemano's challenge to his guilty verdict in the first case before this Court. *See* D.E. 80. Before the Court can overturn Agyemano's conviction for resisting an order of removal, the Court must find that the order of removal violated Agyemano's right to due process. That conclusion requires a finding of prejudice—a likelihood that the failure to notify Agyemano of his right to appeal changed the ultimate result of the removal proceeding. *Id.* at 4–7. Depending on the outcome of a factual dispute, Agyemano may have won on appeal: If Agyemano never received notice of the first removal proceeding—as he claims—then the removal order could be rescinded. *See* D.E. 69 at 2; 8 U.S.C. § 1229a(b)(5)(C) (allowing rescission of a removal order *in absentia* when "the alien demonstrates that [he] did not

3

receive notice [of the hearing]"). Because that factual question is currently before the BIA, the Court chose to stay Agyemano's sentencing until the BIA reaches a decision. D.E. 80.

Soon after the IJ reissued his denial of Agyemano's motion to reopen, and despite the stay of Agyemano's sentencing in this Court, federal agents again tried to remove Agyemano. Agyemano resisted, and the United States filed a new charge for resisting a final removal order. R. 1.

## DISCUSSION

An indictment must assert facts that, if proved, would constitute an offense. *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001). Agyemano argues that the indictment here fails this basic test for three reasons: First, the order of removal had been automatically stayed so he was not subject to removal when the federal agents tried to send him back to Ghana for a second time. R. 17 at 3–4. Second, the order was not "final" as the statute requires because the IJ failed to notify Agyemano of his right to appeal. *Id.* at 5. And, finally, the order was deficient for failing to give notice of appeal rights, so indicting him based on that order would violate due process. *Id.* at 5–6. But all three arguments fail.

Before addressing the merits of Agyemano's motion, it is helpful to briefly review the statutory scheme. For years, the United States conducted two types of proceedings to expel noncitizens from the country: deportation proceedings and exclusion proceedings. In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") combined the "two previously distinct" expulsion procedures—deportation proceedings and exclusion proceedings—to "forge" a new creation called removal proceedings. *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 349, 351 (2005). Because the IIRIRA was prospective, however, it did not completely eliminate deportation and exclusion proceedings. *See Fieran*

4

*v. I.N.S.*, 268 F.3d 340, 345 (6th Cir. 2001) (quoting the IIRIRA § 309(c)(1)) (interpreting the IIRIRA as inapplicable to "alien[s] who [were] in exclusion or deportation proceedings before the [IIRIRA's] effective date"). Proceedings that started before the IIRIRA's 1997 effective date would be governed by rules that still recognize the deportation-exclusion distinction. *See, e.g.*, *Pilica v. Ashcroft*, 388 F.3d 941, 951 n.9 (6th Cir. 2004). But all "[e]xpulsion proceeding[s] initiated after the [IIRIRA's] 1997 effective date are removal proceedings." *Elia v. Gonzales*, 431 F.3d 268, 272 n.4 (6th Cir. 2005).

Even though "removal proceeding" and "deportation proceeding" are distinctly different terms of art, courts continue to use the ordinary meaning of "deportation" to describe the outcome of removal proceedings. *Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 109 (2d Cir. 2007) ("Except when referring to specific statutory language, we will use the terms 'deportation' and 'removal' interchangeably in this opinion." (internal citation omitted)). So to say that "[a]n alien may be *deported* for failing to appear at a *removal proceeding*" does not conflate deportation and removal proceedings. *See Mhaidli v. Holder*, 381 F. App'x 521, 524 (6th Cir. 2010) (emphasis added).

Agyemano entered the United States on a student visa in 2003 and became subject to a notice to appear in 2008. D.E. 1-1 at 1, 2. That 2008 notice to appear initiated the proceeding to expel Agyemano from the United States. *See Matovski v. Gonzales*, 492 F.3d 722, 727 (6th Cir. 2007) ("[T]he [INS] may initiate removal proceedings against the alien by issuing a Notice to Appear."). Because Agyemano's expulsion proceeding started long after the IIRIRA's 1997 effective date, it was a removal proceeding—not a deportation or exclusion proceeding. *See Elia*, 431 F.3d at 272 n.4. With that history in mind, the merits of Agyemano's motion come into focus.

5

**I.    The automatic stay lapsed before federal agents tried to execute the removal order.**

Agyemano argues that his motion to reopen the removal proceeding automatically stayed the removal order—and that the order will remain stayed until the BIA rules on his appeal.  R. 17 at 3–4.  Agyemano is only half right:  His motion to reopen automatically stayed the order of removal; but that stay lasted only until the IJ denied the motion—not through the still-pending appeal.  Agyemano draws support from three sources: the regulations governing motions to reopen (8 C.F.R. § 1003.23), a Department of Justice ("DOJ") fact sheet on forms of relief from removal, and the BIA Practice Manual's chapter on stays.  None of these sources supports Agyemano's argument.

Agyemano cites two different subsections of 8 C.F.R. § 1003.23 to support his claim of an automatic stay through his BIA appeal.  Subsection (b)(1)(v) states that, "[e]*xcept in cases involving in absentia orders*, the filing of a motion to reopen . . . shall not stay the execution of any decision made in the case."  (emphasis added).  By clear implication, a motion to reopen would stay the execution of decisions in cases involving *in absentia* orders.  Subsection (b)(4)(ii), which Agyemano did not cite, confirms the inference:  "The filing of a motion [to reopen an order of removal *in absentia*] shall stay the removal of the alien . . . ."

So far, Agyemano is correct:  His motion to reopen triggered an automatic stay.  But the last portion of subsection (b)(4)(ii) provides that the stay remains in place only until the "disposition of the motion by the Immigration Judge."  To argue that the stay remained effective through his BIA appeal, Agyemano relies on subsection (b)(4)(iii)(C):  "The filing of a motion to reopen under paragraph (b)(4)(iii)(A) of this section shall stay the deportation of the alien pending decision on the motion *and the adjudication of any properly filed*

6

*administrative appeals*." (emphasis added). Because he "properly filed [an] administrative appeal" in November 2014—and that appeal remains unresolved—Agyemano argues that the removal order was still stayed when federal agents tried to deport him in December 2014. R. 17 at 3–4.

But subsection (b)(4)(iii)(C)—which extends an automatic stay through appeal—explicitly limits the subsection to "motion[s] to reopen under paragraph (b)(4)(iii)(A) of this section." Subsection (b)(4)(iii)(A), in turn, only applies to "*deportation* proceedings." (emphasis added). The subsection governing "*removal* proceedings"—subsection (b)(4)(ii)—provides for an automatic stay only until "the disposition of the motion [to reopen] by the Immigration Judge." (emphasis added). Because Agyemano moved to reopen a *removal* proceeding—not a *deportation* proceeding—the resulting stay lapsed as soon as the IJ denied the motion. *See* 8 C.F.R. § 1003.23(b)(4)(ii).

Agyemano also relies on a DOJ fact sheet and the BIA's practice manual. But neither contradicts the clear text of the regulation. The DOJ fact sheet explains that a motion to reopen "does not suspend the execution of the removal decision unless . . . the alien seeks to reopen an in absentia order." R. 17-6 at 3. It also explains that, "[e]xcept in cases involving in absentia orders, filing a motion to reopen will not stay the execution of any decision made in a case." *Id.* Both statements simply mirror the language in 8 C.F.R. § 1003.23(b)(1)(v) ("Except in cases involving in absentia orders, the filing of a motion to reopen . . . shall not stay the execution of any decision made in the case."). But neither statement in the fact sheet explains how long the automatic stay lasts. Section 1003.23 makes it clear that the automatic stay of a *deportation* proceeding lasts through the appeal, (b)(4)(iii)(C), but the automatic

7

stay of a *removal* proceeding lasts only until the IJ disposes of the motion to reopen, (b)(4)(ii). The DOJ fact sheet says nothing different.

The BIA practice manual does address the length of the stay. But, it ultimately undermines—rather than supports—Agyemano's argument. Section 6.2 of the BIA's practice manual is titled "Automatic Stays." R. 17-7 at 2. Subsection 6.2(a)'s heading, titled "Qualifying appeals," explains that "[t]here are limited circumstances in which an order of removal, deportation, or exclusion is automatically stayed." *Id.* Agyemano points to the second of four bulleted circumstances: "appeal of an Immigration Judge's denial of a motion to reopen deportation proceedings conducted in absentia under prior section 242B of the Immigration and Nationality Act ['INA']." *Id.*

But this bulleted provision does not apply to Agyemano's proceeding for two reasons. Just like 8 C.F.R. § 1003.23(b)(4)(iii)(C), the bullet in subsection 6.2(a) of the BIA practice manual explicitly limits itself to "motion[s] to reopen *deportation* proceedings." *Id.* (emphasis added). As discussed above, Agyemano's proceeding was not a *deportation* proceeding; it was a *removal* proceeding.

Nor did Agyemano file his motion to reopen "under prior section 242B of the [INA]." R. 17-7 at 2; *see also* 8 U.S.C. § 1252(b) (West 1996) (codifying prior section 242B, which outlines general notice requirements for deportation proceedings). The IIRIRA repealed section 242B of the INA in 1996—twelve years before Agyemano would fail to appear at his own removal hearing. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 409 n.1 (6th Cir. 2003) (noting that, in 1996, the IIRIRA repealed section 242B of the INA). So, by its own terms, subsection 6.2(a) does not identify any statutory provision that applies to Agyemano.

8

That the subsection's heading lists all three types of proceedings—"removal, deportation, or exclusion"—does not overcome the explicit limitation in the second bulleted circumstance. Because an "or" connects the three types of proceedings, it would be a mistake to read all four bulleted circumstances as applying to all three types of proceedings. *See id.* Regardless, the second bullet's explicit limitation to motions to reopen deportation proceedings filed under prior section 242B of the INA would trump the heading's more general listing of the three types of proceedings. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general.").

The Court does not need to decide whether the automatic stay lapsed when the IJ first denied Agyemano's motion in 2013 or continued until October 8, 2014, when the IJ issued his second denial—this time properly advising Agyemano of his right to appeal. *See* R. 17-3. Either way, the automatic stay lapsed well before December 18, 2014, when the federal agents tried to remove Agyemano from the United States for the second time. *See* R. 1 at 1.

If Agyemano's hearing had been a *deportation* proceeding, his motion to reopen would have stayed his deportation through the conclusion of his appeal. But deportation proceedings exist only for actions initiated before the IIRIRA's 1997 effective date. As we approach the IIRIRA's twentieth anniversary, such proceedings have become increasingly rare. That is not to say they never occur. In 2013, the Fourth Circuit ruled that the appeal of a 2005 asylum application was subject to the pre-IIRIRA version of the INA because of the "unique circumstances of th[e] case": Rather than initiating a new proceeding, the defendant's 2005 asylum application simply reactivated his previously stayed 1990 proceeding. *See Tobar-Barrera v. Holder*, 549 F. App'x 124, 129 (4th Cir. 2013). Because

9

the 1990 proceeding started before the IIRIRA's 1997 effective date, it was a deportation proceeding governed by the pre-IIRIRA version of the INA.

But the facts here are different in critical ways. Agyemano entered the United States in 2003 and was served in 2008 with a notice to appear, triggering his removal proceeding. D.E. 1-1 at 1–2; *see Matovski*, 492 F.3d at 727 ("[T]he [INS] may initiate removal proceedings against the alien by issuing a Notice to Appear."); *cf. Saqr v. Holder*, 580 F.3d 414, 422 (6th Cir. 2009) (holding that service of a "Notice to Appear" triggers the start of a "removal action . . . for purposes of determining whether the pre- or post-IIRIRA definition of aggravated felony applies"). By any measure, then, the post-1997 regulations governing removal proceedings applied to Agyemano's case. Accordingly, his stay lapsed when the immigration judge denied Agyemano's motion to reopen the removal proceeding. *See* 8 C.F.R. § 1003.23(b)(4)(ii) ("The filing of a motion [to reopen removal proceedings] shall stay the removal of the alien pending disposition of the motion by the Immigration Judge.").

## II. The order of removal became final upon issuance.

Next, Agyemano argues that the order of removal *in absentia* was not final because the IJ failed to advise Agyemano of his appeal rights and the order is currently on appeal. *See* R. 17 at 5. But neither a failure to notify nor a pending appeal undermines the finality of a removal order. Instead, orders of removal *in absentia* become final "immediately upon entry" by the IJ. *See* 8 C.F.R. § 1241.1(e). So the order of removal became final before Agyemano even filed his motion to reopen. *Id.* The regulation says nothing about that finality lapsing if the IJ later fails to properly deny the motion to reopen. Nor does section 1241.1 condition the finality of the order on the IJ properly instructing the alien of his right to appeal—much less on the conclusion of that appeal. *See id.*

10

**III.     The IJ cured any due process defect when he notified Agyemano of his appeal rights in the reissued order.**

Finally, Agyemano revives the argument that earned him a sentencing stay in the first case: basing a criminal prosecution on the violation of a defective removal proceeding violates due process. R. 17 at 5 (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 829 (1987)); *see also* D.E. 80 (order denying Agyemano's motion to overturn his verdict pending the outcome of his BIA appeal). In the first case, the Court concluded that allowing the conviction to stand might violate Agyemano's due process rights—but only if the failure to notify Agyemano of his right to appeal caused him prejudice. D.E. 80. The appeal before the BIA will resolve the prejudice question. So it made sense for the Court to await the BIA's answer. But that question does not exist here.

When federal agents tried to remove Agyemano the first time, he had not been notified of his right to appeal. *See* R. 17 at 5. But the second time was different: By December 18, 2014, when federal agents tried to remove Agyemano for the second time, the IJ had already reissued his denial of Agyemano's motion to reopen. *See* R. 17-3. This second denial properly advised Agyemano of his right to appeal. *Id.* at 2. And though Agyemano's appeal was underway, the order remained enforceable. *See* 8 C.F.R. § 1241.1(e) (explaining that orders of removal *in absentia* become final "immediately upon entry" by the IJ); 8 C.F.R. § 1003.23(b)(4)(ii) (explaining that the automatic stay triggered by a motion to reopen only lasts until "the disposition of the motion by the [IJ]"). In light of the reissued denial that properly advised Agyemano of his right to appeal, Agyemano has failed to explain how the current prosecution violates his due process rights.

It may seem harsh to force Agyemano to obey a removal order while his appeal is still pending. But—save for extreme cases implicating constitutional protections—it is not for the courts to moderate the choices that Congress has made. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) ("This Court's unwillingness to soften the import of Congress' chosen words even if it believes the words lead to a harsh outcome is longstanding."). Congress designed IIRIRA to "*expedite* [alien] removal," *see INS v. St. Cyr*, 533 U.S. 289, 327 (2001) (Scalia, J., dissenting), knowing full well that some aliens would have to continue their appeal from abroad, *cf. Moore v. Ashcroft*, 251 F.3d 919, 922 (11th Cir. 2001) (citing INA § 242; 8 U.S.C. § 1252) (holding that under IIRIRA, Congress "clear[ly] change[d] the statutory language" of the INA to indicate that "an alien's deportation or departure from this country no longer forecloses judicial review of removal orders").

Of course, Agyemano's ability to prosecute his appeal from Ghana would have provided little consolation in the first case—when Agyemano had no notice that he could appeal. *See* R. 17-2. But here, because the IJ remedied his error and advised Agyemano of his appeal rights, the possibility of another procedural defect does not entitle Agyemano to repeatedly disregard removal orders. Now that the IJ has corrected his initial error, Agyemano can fully litigate his appeal—both before and after he is removed from the United States.

The Court understands that, in Agyemano's view, appellate victory after removal to Ghana would come too late: The moment he steps foot on Ghanaian soil, Agyemano faces life-threatening danger due to the on-going struggle to replace the now-deceased tribal chief—or so Agyemano has consistently claimed. D.E. 40 at 2; D.E. 43. But the IJ rejected Agyemano's motion for asylum—in which he made these precise arguments—as

"unsupported" and "speculative." D.E. 40-1 at 3. Agyemano resurrected these arguments during his trial and, again, they were rejected—this time by a jury. D.E. 56 at 1–2. The Court is not unsympathetic to Agyemano's plight; but sympathy is not a sufficient ground to grant the relief that Agyemano seeks.

## IV. Speedy Trial Act calculation.

When Agyemano filed his motion to dismiss, R. 17, the Court continued the trial in this case to ensure sufficient time to fully consider the motion. R. 26. The Speedy Trial Act "automatically exclud[es]" delays "resulting from any pretrial motion, from the filing of the motion through . . . prompt disposition" of the motion. *See Bloate v. United States*, 559 U.S. 196, 205 (2010) (quoting 18 U.S.C. § 3161(h)(1)(D) (internal quotation marks omitted)). The period during which the Court "actually . . . consider[s]" the motion is "not to exceed thirty days." 18 U.S.C. § 3161(h)(1)(H). So the Court will exclude from Agyemano's Speedy Trial Act calculation the period of time from the motion's filing—February 11, 2015—through the date of this order. *See* 18 U.S.C. § 3161(h)(1)(D), (h)(1)(H).

## CONCLUSION

While the first case against Agyemano continues to linger in uncertainty, this case marches on. When federal agents tried to remove Agyemano from the United States for the second time, they were executing a final and enforceable order of removal. The order of removal became final when the IJ issued it. The automatic stay lapsed when the IJ declined to reopen the removal proceeding. And the United States does not violate Agyemano's due process rights by prosecuting his resistance.

Accordingly, it is **ORDERED** that:

(1) Agyemano's motion to dismiss, R. 17, is **DENIED**.

(2) The period of time from February 11, 2015, through March 20, 2015, shall be **EXCLUDED** from Agyemano's Speed Trial Act calculation. *See* 18 U.S.C. § 3161(h)(1)(D), (h)(1)(H).

This the 24th day of March, 2015.

Signed By:
*Amul R. Thapar*   AT
United States District Judge